**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
ADASA BLANCO,                                     :
                                                  :
                      Plaintiff                   :        Civil Action No.:
                                                  :
          v.                                      :
                                                  :        **COMPLAINT**
TWENTY-FIRST CENTURY FOX, INC., FOX               :
NEWS NETWORK LLC, JUDITH SLATER, in               :
her individual and professional capacities, and   :        **Jury Trial Demanded**
DIANNE BRANDI, in her individual and              :
professional capacities and SUSAN LOVALLO,        :
in her individual and professional capacities,    :
                                                  :
                      Defendants.                 :
------------------------------------------------------------ X

Plaintiff Adasa Blanco brings this Complaint against Twenty-First Century Fox, Inc.

("21st Century Fox"), Fox News Network LLC ("Fox News," and, together, "Fox" or the

"Company"), Judith Slater ("Slater"), Dianne Brandi ("Brandi") and Susan Lovallo ("Lovallo")

(collectively with Fox, "Defendants") and hereby alleges as follows:

## SUMMARY OF THE CLAIMS

1.      As described herein, Plaintiff and other dark-skinned employees suffered years-

long relentless racial animus at the hands of their White supervisor, Slater, an eighteen-year

employee and former Senior Vice President ("SVP") of Accounting and Controller of Fox.

Despite being well aware of Slater's racist conduct, executives at Fox did nothing to put an end

to it and intentionally turned a blind eye.  For years, Fox permitted Slater to subject Plaintiff and

other dark-skinned employees to a racially hostile work environment without fear of punishment

or reprisal, and refused to terminate Slater for her conduct or, upon information and belief, even

reprimand her in anyway.

2.      That all changed in late March 2017, when Plaintiff's attorneys, Wigdor LLP, put Fox on notice that Fox employees Tichaona Brown and Tabrese Wright intended to file a lawsuit against Fox in connection with Slater's hateful conduct.

3.      Fox's public relations machine went into full gear.  In an effort to get out ahead of this lawsuit and pretend to care about the discriminatory conduct committed against Ms. Brown, Ms. Wright and other Black employees, upon information and belief, Fox leaked some of the allegations contained herein to the press.

4.      The leak was on March 24, 2017, a Friday, a day notoriously used to bury stories. Fox terminated Slater as well.

5.      That day, immediately after Ms. Brown and Ms. Wright put Fox on notice that they were going to file a lawsuit, Fox, in a transparent attempt to avoid negative publicity and salvage its reputation, terminated Slater and issued the following statement:

> "We take any complaint of this nature very seriously and took the appropriate action in investigating and **firing Ms. Slater within two weeks of this being brought to our attention**."

See, e.g., http://variety.com/2017/tv/news/fox-news-comptroller-judy-slater-1202016012/.

6.      Fox's claim is completely false.  Slater was not terminated because she engaged in discriminatory conduct – Fox was willing to let her get away with that for years.  Rather, Slater was terminated because Fox knew this would become a public matter and wanted to salvage its reputation.

7.      Ms. Brown and Ms. Wright commenced their action against Fox on March 28, 2017, see Brown, et al. v. Twenty First Century Fox, Inc., et al., Index No. 22446/2017E (Bronx County) (the "Brown Action"), attached hereto as Exhibit A.  Less than one week later, the complaint was amended to add Fox employee Monica Douglas, who also alleged that she was

subjected to a racially hostile work environment at Fox.  See Brown Action, Dkt. No. 5, attached hereto as Exhibit B.

8.      As evidenced by the facts regarding Ms. Douglas, in mid-2015, Brandi contacted her regarding a complaint about Slater that she had received from the former Director of Payroll, Natasha Beekharry.   In response to Brandi's inquiry, Ms. Douglas again complained about Slater's discriminatory conduct and again, nothing was done.  Instead, according to Ms. Douglas, Brandi declared that (despite the overwhelming evidence to the contrary, and without conducting any investigation) she did not believe Slater to be racist.  According to Ms. Douglas, Brandi said:

> **"Slater will not be fired because she knows too much," referring to Slater's knowledge regarding improprieties committed by former Fox News CEO Roger Ailes and former Fox News CFO Mark Kranz.**

9.      Ms. Blanco's facts are shockingly similar but reveal an even more egregious truth. Fox knew that employees had complained about Slater's race discrimination more than **eight years ago** – yet no action was taken.  Detailed below, Ms. Blanco reported the racially hostile work environment to Brandi, Fox News's Executive Vice President, Legal and Business Affairs, as early as September 2008 – **eight and a half years before Slater was terminated**.

10.      On another occasion, Ms. Blanco complained about racially discriminatory conduct committed by Slater and Lovallo to Denise Collins ("Collins"), Fox News's Head of Human Resources ("HR"), in October of 2012 – **nearly four and a half years before Slater was terminated**.

11.       Simply put, Fox knowingly harbored and protected a racist employee, Slater, for more than eight years and then feigned and mispresented to the media and public that it terminated her immediately upon learning that she engaged in discriminatory conduct.

12.     The news media and public, however, have only begun to scratch the surface of the outrageous discriminatory conduct committed by Fox and its Executives.

13.     Ms. Blanco was forced to watch as many other minority employees were subjected to similar race discrimination at Fox.  By way of example only, Ms. Blanco witnessed Slater's relentless discrimination against a junior employee, Musfiq Rahman.  Mr. Rahman, who is from Bangladesh and has dark-skin, spoke with an accent.  For more than three years, despite his excellent work performance, Slater berated and disparaged Mr. Rahman, mocking his accent and inability to pronounce certain words.  Slater complained that she "could not understand" Mr. Rahman and mocked him in group meetings and privately.

## The Building of Roger Ailes' Internal Barrier Wall

14.     Following 9/11, certain executives, including Roger Ailes ("Ailes"), the former Fox Chief Executive Officer, expressed concerns about subsequent terror attacks on New York City.  Sometime in late 2014, Mr. Rahman was on the second floor of Fox's New York City office, looking for a group of other co-workers.  Mr. Rahman mistakenly walked into Ailes's office, which up to that point was open to the floor and not blocked by any wall or door.  The fallout for Mr. Rahman's "mistake" was swift and severe.  Ailes was furious and his paranoia about being attacked came to the forefront.  That same day, Ailes ordered that a wall be constructed immediately in his personal office to act as a barrier to entry.  This wall was an obvious attempt at preventing dark-skinned employees, especially males who could be mistaken for being of "Middle-Eastern descent," from walking in unannounced and frightening Ailes.

15.     The following day, Mr. Rahman, along with a number of Black employees in the accounts receivables and accounts payables department, had their security passes to the second

floor revoked.  Thereafter, these humiliated employees were forced to get "escorts" when they needed to speak to other employees on the second floor.

16.     Ms. Blanco witnessed such blatant acts of bigotry, in addition to many of the events set forth in the Brown Action.  By way of example only, the pervasive race discrimination committed by Slater against minorities at Fox included:

- Slater ridiculed Black employees by mocking stereotyped speech and complained, for example, that Black employees mispronounce the words "mother," "father," "month" and "ask," by pronouncing the words as "muva," "fava," "monf," and "axe," and incredulously forced Black employees to practice saying the words correctly in front of White employees.

- Slater disparaged Black men in particular.  For instance, when a video surfaced on the internet that depicted the Black football player, Ray Rice, assaulting his wife in the elevator, Slater said, "Why are all Black men women-beaters?"  In connection with the video, Slater brought up O.J. Simpson, Mike Tyson and Chris Brown as other examples of Black male wife-beaters.

- Slater regularly talked about her fear that Black people want to physically harm White people, Slater told employees that she does not travel north of 90th Street in Manhattan because she is afraid she will be "jumped" or "beat up."   For safety reasons, Slater claims to travel there only when accompanied by a Black person.

- Slater blatantly mocked the "Black Lives Matter" movement.  After the August 2014 shooting of Mike Brown, and the onset of the "Hands Up, Don't Shoot" slogan,  when Ms. Brown would stop by Slater's office to say good-bye at the end of the day, Slater responded by raising her hands up in the "Hands Up, Don't Shoot" movement.

- Slater regularly called her commuter train to New Jersey the "Bombay Express," due to the number of people of Indian descent who live in New Jersey.

- Slater openly talked about her belief that all Chinese men have "small penises."

- Slater called day laborers "cheap Mexicans."

- Knowing that Ms. Wright has three children, Slater incredulously asked her if all three children "were fathered by the same man."

Ex. B, Brown Action at ¶ 2.

17.    These are only a tiny fraction of the discriminatory actions engaged in by Slater.

18.    Slater's conduct and Fox's acquiescence to it should come as no surprise and is the natural result of an all-White executive team.   Indeed, not one of 21st Century Fox's Executives are Black, and there is only one Black member of the board of directors.[1]

19.    In addition to the racial discrimination described herein and in the Brown Action, no one predicted the extent of the fallout after anchor Gretchen Carlson exposed the scathing gender abuse at Fox when she filed a lawsuit alleging that Ailes subjected her to a litany of sexually harassing comments and actions.   Despite Ailes' denials, multiple women from Fox came forward with similar allegations of a boss who regularly demanded sexual favors from female staff, made sexually charged and degrading comments with impunity, and did nothing to conceal his lewd behavior.   To date, the stories of more than 25 women, whose professional interactions with Ailes spanned two decades, shockingly reveal that Ailes regularly used his position of power to threaten and control women in junior positions through sexual bullying.[2]

---

[1]     See https://www.21cf.com/management/executive-team; see also https://www.21cf.com/management/board-of-directors.

[2]     Although media outlets described Ms. Carlson's lawsuit as the first public outing of Ailes's disgusting and lewd behavior, *New York* magazine reporter Gabriel Sherman included in his 2014 biography on Ailes interviews with four women who described multiple instances where Ailes used his position of power to make unwanted sexual advances towards junior female employees.   See   http://nymag.com/daily/intelligencer/2016/07/six-more-women-allege-ailes-sexual-harassment.html; see also Gabriel Sherman, *The Loudest Voice in the Room: How the Brilliant, Bombastic Roger Ailes Build Fox News – and Divided a Country* (2014).  After Ailes attempted to defame Ms. Carlson in response to her lawsuit, Mr. Sherman quickly hit Fox with a detailed report of at least six women who asserted similar claims against Ailes.

20.     Most recently, in April 2017, Fox News contributor Julie Roginsky filed suit against Fox News, Ailes and current Fox News Co-President William Shine, alleging that she faced retaliation for rebuffing Ailes's sexual advances.[3]

21.     Then, on April 1, 2017, the New York Times reported that more than $13,000,000 had been paid out to settle claims that Bill O'Reilly ("O'Reilly"), Fox News's most popular (and highest revenue-generating) television host, had harassed or sexually harassed five different women dating back to 2002.   See   https://www.nytimes.com/2017/04/01/business/media/bill-oreilly-sexual-harassment-fox-news.html.   According to the New York Times, "Fox News has been aware of complaints about inappropriate behavior by Mr. O'Reilly since at least 2002."  Id.

22.     No employee should be forced to endure invidious racial or sexual harassment. Nevertheless, like the other employees of color at Fox, Ms. Blanco feared for her job if she demanded that Fox take action to remedy the harassment.  Such fears were reasonable given the knowledge and ratification of Slater's conduct by senior executives at Fox, including Collins, Brandi and Lovallo.

23.     Indeed, as the amended complaint in the Brown Action makes clear, Fox failed to hesitate when it retaliated against Ms. Brown and Ms. Wright for speaking out.  Specifically, Ms. Brown was fired and Ms. Wright was demoted.

24.     Flouting all responsibility to follow the laws designed to protect employees in these exact circumstances, Fox clearly sees itself as a company entitled to operate above and outside of the civil laws applicable to everyone else.

25.     As a result, Ms. Blanco commences this action to seek declaratory, injunctive and equitable relief, and monetary damages, against Defendants for harm suffered as a direct result of

---

[3]     See https://www.nytimes.com/2017/04/03/business/media/fox-news-roger-ailes-harassment-suit.html.

their discrimination, harassment and retaliation. At all times, Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Ms. Blanco's rights, warranting an award of punitive damages. Such conduct has caused, and continues to cause, Ms. Blanco to suffer substantial monetary damages and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

26.     Ms. Blanco brings this action to seek monetary, declaratory and injunctive relief under 42 U.S.C. § 1981 ("Section 1981").

27.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981.

28.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

29.     Plaintiff Adasa Blanco lives in Bronx County, New York. Ms. Blanco was employed by Fox as a senior disbursement coordinator in Fox News's Accounts Payable Department. At all relevant times, Ms. Blanco met the definition of an "employee" under all applicable statutes.

30.     Defendant Twenty-First Century Fox, Inc. is a corporation with its principal place of business in New York County, New York, and is duly organized and existing under and by virtue of the laws of the State of Delaware. At all relevant times, Twenty-First Century Fox, Inc. has met the definition of an "employer" of Ms. Blanco under all applicable statutes.

31.     Defendant Fox News Network LLC is a limited liability company with its principal place of business in New York County, New York, and is duly organized and existing under and by virtue of the laws of the State of Delaware.  Fox News Network LLC is a wholly owned subsidiary of Twenty-First Century Fox, Inc.  In turn, Fox News Network LLC owns Fox News Channel LLC and Fox Business Channel.  At all relevant times, Fox News Network LLC has met the definition of an "employer" of Ms. Blanco under all applicable statutes.

32.     Defendant Judith Slater is a resident of the State of New Jersey.  Defendant Judith Slater was employed at Fox as its Controller for eighteen years, until March 2017.  In this capacity, she supervised all employees in the payroll, accounting and account receivables/payable departments, including Ms. Blanco.  At all relevant times, Defendant Judith Slater met the definition of an "employer" of Ms. Blanco under all applicable statutes.

33.     Defendant Dianne Brandi resides in New York County, New York.  Defendant Brandi is employed at Fox as the Executive Vice President, Legal and Business Affairs.  Defendant Brandi has served as in-house counsel for Fox for over twenty years.  In this capacity, she oversees multiple departments and other executives.  At all relevant times, Defendant Brandi has met the definition of an "employer" of Ms. Blanco under all applicable statutes.

34.     Defendant Susan Lovallo resides in Putnam County, New York.  At all relevant times, Defendant Lovallo has met the definition of an "employer" of Ms. Blanco under all applicable statutes.

## FACTUAL ALLEGATIONS

## MS. BLANCO IS SUBJECTED TO SEVERE AND PERVASIVE DISCRIMINATION

35.     Ms. Blanco began working for Fox in December 2005, when she was hired as an accounts payable specialist in Fox's Accounts Payable Department.  Ms. Blanco worked in the Accounts Payable Department until her constructive discharge in August 2013.

36.     The Accounts Payable Department is part of the Administration Department ("Administration") at Fox and, as such, at the start of Ms. Blanco's employment her desk was located on the same floor and in close proximity to senior executives in Administration, including Ailes (until his recent departure), William Shine, Jack Abernathy, Neil Cavuto, Mark Krantz, Sharri Berg, Suzanne Scott and Brian Jones.

37.     Ms. Blanco reported directly to Mark LeGrier, the supervisor in Accounts Payable.  Mr. LeGrier, in turn, reported to Slater.

38.     From the beginning of her employment through May 14, 2013, her last day in the office, Ms. Blanco was subjected to a continuous stream of severe and pervasive discriminatory conduct at the hands of Slater and Lovallo.

39.     By way of example only, Slater constantly mocked Ms. Blanco because, given that she is Puerto Rican and Hispanic, she has an accent.  In particularly, Slater routinely made fun of Ms. Blanco for rolling her "Rs" when she spoke.

40.     Slater also spent significant time forcing Ms. Blanco to repeat words such as "three" and "through," and chastising Ms. Blanco if she rolled her "Rs" while doing so.  Slater would often make fun of Ms. Blanco's accent and say, "repeat after me," after which she would force Ms. Blaco to repeat a word Slater believed she mispronounced.  Slater engaged in this cruel and discriminatory behavior solely because of Ms. Blanco's race and ethnicity.

41.     Slater also regularly referred to the Payroll Department as her "urban" Payroll Department due to the number of minorities in the department.

42.     Slater also stated that she did not like to travel uptown to neighborhoods with high minority populations because she did not "want to get jumped."  Similarly, Slater referred to any areas with a high percentage of minorities as "the hood."  Of course, as a minority herself, this comment was highly offensive to Ms. Blanco, as it insinuated that minorities are violent and dangerous people by nature.

43.     Slater made similar discriminatory comments in Ms. Blanco's presence with regard to other minorities, including other Hispanics.  By way of example only, Slater repeatedly insulted Ms. Douglas for having an accent because she is Panamanian by making comments such as, "huh, what did you say?  I can't understand that Panamanian accent," or "I can't understand you people's accent."  When Ms. Douglas took offense to these comments, Slater would respond by telling Ms. Douglas that Panamanians were "too sensitive."

44.     Slater would also threaten physical violence against minorities in an effort to "keep them in line" and prevent complaints about her conduct.  By way of example, Slater often threatened to punch minority employees in the head.  She did not threaten to commit physical violence against White employees.

45.     Slater also got physical with Ms. Douglas, including throwing rolled up balls of paper at Ms. Douglas in front of her colleagues.  According to the amended complaint in the Brown Action, Slater even "kicked Ms. Douglas in the buttocks" and "mockingly rubbed Ms. Douglas's hair in order to feel it's 'texture.'"

46.     Slater also insulted Credit and Collections Manager Vielka Rojas, who is also Panamanian.  By way of example, on one occasion she openly stated in a demeaning manner that

Ms. Rojas was "cleaning like a Panamanian," when Ms. Rojas was wiping down her desk.  This was extremely offensive and a play on the discriminatory stereotype that all Hispanic women are housecleaners.

47.     Slater also regularly insulted Panamanian culture and people generally, including by stating that she would not even let her dog eat Panamanian food and that Panamanians eat what White people throw in the garbage.  As another example, Slater regularly stated that "all Panamanians are crazy."

48.     The comments were particularly offensive to Ms. Blanco not only because they targeted Hispanics, but also because her adopted father is Panamanian and her siblings are all half-Panamanian.

49.     Slater also regularly made fun of Black employees for their purported inability to pronounce words such as "mother," "father," "month" and "ask."   Slater – who repeatedly claimed that Black individuals could only manage mispronunciations such as "muva," "fava," "monf" and "axe" – often demanded that Black employees, including Ms. Brown, Mr. Wright and Ms. Douglas, practice pronouncing these words in front of their colleagues.  Slater did the same to Ms. Blanco, forcing her in open meetings to repeat words and chastising her for rolling her "Rs."

50.     Lovallo also participated in the discriminatory conduct committed against Ms. Blanco.  Indeed, Lovallo, who lives in Brewster, New York, complained to Ms. Blanco and others that she was "sick of seeing" all of the Latinos who had recently moved into Brewster.

51.     In addition to all of the aforementioned discriminatory comments – and many others – Slater and Lovallo constantly yelled and screamed at, demeaned, belittled, micromanaged and criticized Fox's minority employees.  Slater also degraded Ms. Blanco and

other minority employees by insinuating or telling them that they were useless.  This conduct, which occurred on a daily basis and was directed only at minority employees, contributed to the hostile work environment to which Ms. Blanco was subjected.

52.     Slater also routinely threatened Fox's minority employees, telling them repeatedly that their jobs could be "outsourced at any minute" in order to prevent them from complaining about her discriminatory conduct.

## MS. BLANCO PUTS FOX ON NOTICE OF THE DISCRIMINATION: FOX DOES NOTHING

53.     Ms. Blanco put Fox News on notice of the discriminatory conduct committed by Slater as early as <u>September 2008</u>, when she reported Slater's discriminatory comments and conduct to Brandi.  Indeed, Ms. Blanco explicitly told Brandi that Slater "makes discriminatory comments all the time, but nothing is ever done so what is the point in reporting it."  Consistent with Fox's practice up to that point, Brandi did not even *ask* Ms. Blanco for examples or the details of the discriminatory conduct reported by Ms. Blanco.  Upon information and belief, nothing was done to investigate Slater's racially discriminatory conduct.  The conduct continued.

54.     In October 2012, again, Ms. Blanco reported Slater's and Lovallo's discriminatory conduct.  This time, she reported it to Collins.  Although Collins said that she would investigate the matter, upon information and belief she never did.  Collins failed to follow-up with Ms. Blanco and the discrimination did not cease or even slow.

## MS. BLANCO IS CONSTRUCTIVELY DISCHARGED

55.     In late-2012, Ms. Blanco learned that she was pregnant and due in July 2013.

56.     In May 2013, due, upon information and belief, to the stress Ms. Blanco experienced as a result of the discrimination to which she was subjected, Ms. Blanco experienced extremely painful contractions and was rushed to the hospital.

57.     Ms. Blanco's doctors put her on bedrest, and her baby was prematurely born the following month.  Following the birth of her son, Ms. Blanco remained on leave.

58.     Ultimately, knowing that she would be subjected to continuing racial harassment and an unbearable hostile work environment, and that her late-2012 complaints to Brandi went completely ignored, Ms. Blanco was unable to return to work.  Under the circumstances, any reasonable person simply would not have been able to return to work.  As such, Ms. Blanco was constructively discharged.

**FOX'S CLAIM THAT IT FIRED SLATER WHEN IT LEARNED OF HER CONDUCT IS FALSE: MS. DOUGLAS COMPLAINED YEARS AGO**

59.     Both before and after Ms. Brown and Ms. Wright filed their lawsuit against Defendants, Fox publicly stated that it took "appropriate action" in dealing with Slater, and insinuated that it did not know about her unlawful conduct until after Ms. Brown and Ms. Wright had complained.  Indeed, Fox issued the following statement on March 24, 2017:

> "We take any complaint of this nature very seriously and took the appropriate action in investigating and ***firing Ms. Slater within two weeks of this being brought to our attention***."

See, e.g., http://variety.com/2017/tv/news/fox-news-comptroller-judy-slater-1202016012/

60.     Fox's claim is completely false.  Indeed, as explained above, Fox was on notice of Slater's discriminatory conduct as early as September 2008 – ***eight and a half years before Slater was terminated***.

*61.*     Ms. Blanco again put Fox on notice of Slater and Lovallo's discriminatory conduct in October 2012 – ***nearly four and a half years before Fox fired Slater***.

**FURTHER EVIDENCE THAT FOX WAS ON NOTICE OF RACIAL DISCRIMINATION**

62.     According to Ms. Brown, Ms. Wright and Ms. Douglas, Fox knew that other employees had complained about Slater and other supervisors at Fox in connection with racial discrimination.

**Monica Douglas**

63.     Ms. Douglas alleges that she complained about Slater's discriminatory conduct numerous times to Brandi.  Ms. Douglas alleges that, more than two years ago, on November 10, 2014, at 1:00 p.m., Ms. Douglas complained to Brandi about the racial discrimination committed by Slater.  According to Ms. Douglas, nothing was done to remedy the problem, and the discrimination continued until Ms. Slater was terminated in March 2017, immediately after Fox learned that Ms. Brown and Ms. Wright would be suing Fox.

64.     Also according to Ms. Douglas, in mid-2015, Brandi contacted Ms. Douglas regarding a complaint about Slater that she had received from the former Director of Payroll, Natasha Beekharry.  In response to Brandi's inquiry, Ms. Douglas alleges that she again complained about Slater's discriminatory conduct and that, again, nothing was done.  Instead, according to Ms. Douglas, Brandi declared that (despite the overwhelming evidence to the contrary, and without conducting any investigation) she did not believe Slater to be racist. According to Ms. Douglas, Brandi said:

> **"Slater will not be fired because she knows too much,"
> referring to Slater's knowledge regarding improprieties
> committed by former Fox News CEO Roger Ailes and former
> Fox News CFO Mark Kranz.**

**Natasha Beekharry**

65.     Ms. Beekharry was the Director of Payroll at Fox, who, according to Ms. Brown, Ms. Brown reported to throughout her employment until May 2016 when Ms. Beekharry left

Fox.  According to Ms. Wright, she also reported to Ms. Beekharry.  Ms. Beekharry worked directly under Slater.

66.     According to Ms. Brown, Ms. Wright and Ms. Douglas, in or about August 2015, Fox was contacted by legal counsel for Ms. Beekharry to provide the Company with notice of the racial discrimination Slater engaged in.

67.     According to Ms. Brown, Ms. Wright and Ms. Douglas, Ms. Beekharry departed from Fox in or about May 2016.

**Mark LeGrier**

68.     Upon information (including the Brown Action) and belief, Mr. LeGrier, also complained to HR and other Fox employees about Slater's racial discrimination.  Mr. LeGrier, a Black male and former Accounts Payable supervisor, told co-workers that he was "forced into early retirement because of Judy Slater."   Slater, along with Tamela Efinger, Director of Accounting, ridiculed and harassed Mr. LeGrier on the basis of the color of his skin.

69.     Mr. LeGrier complained that he could no longer tolerate Slater's racial animus.

70.     Moreover, at the time that Mr.  LeGrier exited Fox, Slater had refused to give him a review or salary increase for over three years.

**Harmeen S. Jones**

71.     Harmeen S. Jones, a former Black employee at Fox, commenced an action for discrimination and retaliation under Section 1981 and Title VII against Fox in the United States District Court, Southern District of New York, Index No. 10 Civ. 7967 (PKC).

72.     In 2005, Mr. Jones was hired by Fox and worked in connection with the department responsible for organizing global "intake feeds" from Fox cameras all over the world.  The room contained a wall of screens showing the feeds and rows of control stations

facing the screens.  According to his second amended complaint, Jones had to sit one row behind (about 5-6 feet) a co-worker named Damian Rodriguez ("Rodriguez").  Rodriguez purportedly engaged in an endless stream of racist statements each day, about Blacks, Arabs, Muslims and women.  Rodriguez made racist remarks about Mr. Jones, directly to him and in front of co-workers, and bullied and physically threatened him.

73.     Mr. Jones's complaint alleges that he could not report the discrimination to HR because the people in HR were friends with his supervisors and Rodriguez and nothing would be done.

74.     At some point in 2009, however, Mr. Jones finally reported the racial discrimination to Veracil Vega, the head of HR for News Corp. and to his supervisors.  A meeting about the discrimination was held.  Shortly thereafter, Mr. Jones was terminated.

75.     In connection with this action, Mr. Jones named two White male supervisors, William "Billy" Tote and Steve Carey.

76.     According to Ms. Brown, Billy Tote and Steve Carey often fraternized with Slater in Slater's office.

**<u>Wasim Rafick</u>**

77.     According to the Brown Action, Wasim Rafik, another minority employee reporting up to Slater, complained to Collins about Slater's discriminatory conduct.

78.     According to the Brown Action, rather than addressing the ongoing issues with Slater, Fox knowingly chose to remove Mr. Rafik from Fox as quietly as possible.  According to the Brown Action, Mr. Rafik left Fox in or around December 2016.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of the Section 1981)
*Against All Defendants*

79.     Plaintiff hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

80.     As described above, Defendants have discriminated against Plaintiff on the basis of her race and/or ethnicity in violation of Section 1981 by, *inter alia*, (i) fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a racially hostile work environment; and (ii) constructively discharging her.

81.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, economic damages, mental anguish and emotional distress for which she is entitled to an award of damages.

82.     Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the Section 1981)
*Against All Defendants*

83.     Plaintiff hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

84.     As described above, Defendants have retaliated against Plaintiff on the basis of her protected activities in violation of Section 1981 by, *inter alia*, ignoring her protected complaints about the discrimination she was subjected to, including relating to racial harassment and discrimination she was subject to after, and in direct connection with, her protected

complaints.  By their retaliatory actions, Defendants continued to foster a racially hostile work environment and engaged in conduct that led to her constructively discharging her.

85.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, economic damages, mental anguish and emotional distress for which she is entitled to an award of damages.

86.     Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States;

B.     An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with Defendants, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.     An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D.     An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages;

F.      An award of punitive damages, and any applicable penalties;

G.      Prejudgment interest on all amounts due;

H.      An award of costs that Plaintiff incurs in this action, as well as an award of reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: April 25, 2017
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
       Douglas H. Wigdor
       Jeanne M. Christensen
       Michael J. Willemin

85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@wigdorlaw.com
jchristensen@wigdorlaw.com
mwillemin@wigdorlaw.com

*Attorneys for Plaintiff*